UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x

MICHAEL UHR,

Plaintiff,

-against-

DEALMED, INC. and MICHAEL
EINHORN,

Defendants.
------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   MAR 0 1 2011   ★

Civil Action No.: BROOKLYN OFFICE

NOTICE OF REMOVAL

CV 11 0988

COGAN, J.

DEALMED, INC and MICHAEL EINHORN, the defendants in the above-

captioned action which was commenced in the Supreme Court of the State of

New York, County of Kings, gives notice that they are removing this action from

the Supreme Court of the State of New York, County of Kings, to this Court

pursuant to U.S.C. Section 1441. The grounds for removal are as follows:

1.    A civil action was commenced and is now pending against the

defendants in Supreme Court of the State of New York, County of Kings, which

action is entitled: Michael Uhr v. DealMed, Inc. and Michael Einhorn, Index No.

1570/2011.

2.    On or about January 21 2011, plaintiff filed a Summons and

Complaint, a copy of which is attached herein as **Exhibit A**. By Stipulation,

defendant's time to answer or move has been extended until March 28, 2011.

3.    The above described action is a civil action of which this Court has

original jurisdiction under 28 U.S.C. Section 1332 and is one which may be

removed to this Court by the defendant under 28 U.S.C. Sections 1332 and 1441

in that:

1

      a.     Plaintiff is noted to be listed on the complaint as a citizen of the State of New Jersey.

      b.     The defendants, DEALMED, INC., AND MICHAEL EINHORN, are citizens of the State of New York, and DEALMED, INC., maintains an office for the transaction of business located 1308 Avenue N, Brooklyn, NY 11230.

      c.     The incident claimed to have caused damages to the plaintiff as alleged in the complaint occurred in the State of New York.

      d.     The amount in controversy herein may exceed $75,000.00 including interest and costs.

    4.     Accordingly, as the parties are of diverse citizen and the amount in controversy may exceed $75,000.00 including interests and costs, Federal jurisdiction is appropriate pursuant to 29 U.S.C. Section 1332.

    WHEREFORE, the defendants give notice that the above action now pending against them in the Supreme Court of the State of New York, County of Kings, is removed to this Court.

DATED: Melville, New York
         February 28, 2011

               Michael B. Schulman & Associates, P.C.
               By: Michael B. Schulman (MBS3690)
               Attorneys for Defendants
               145 Pinelawn Road, Suite 310N
               Melville, New York 11747
               (631) 622-2080

TO:    NAFTALI Z. DEMBITZER
       Attorney for Plaintiff
       2127 59TH Street
       Brooklyn, New York 11204
       (718) 614-6449

# Exhibit "A"

Jan. 26. 20   9:23AM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X   Index No. 1570/2011

MICHAEL UHR,

                                    Plaintiff,      Date Purchased:
                                                    January 21, 2011

                    -against-                       Plaintiff designates Kings
                                                    County as the place of trial
DEALMED, INC. and MICHAEL EINHORN

                                    Defendants.     **SUMMONS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

To The Above Named Defendants DEALMED, INC. AND MICHAEL EINHORN:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and

to serve a copy of your answer on Plaintiff Michael Uhr, within twenty (20) days after the

service of this summons, exclusive of the day of service (or within thirty (30) days after

service is complete if this summons is not personally delivered to you within the State of

New York); and in case of your failure to appear or answer, judgment will be taken against

you by default for the relief demanded in the complaint.

Plaintiff designates **KINGS COUNTY** as the place of trial. The bases of the

designated venue are that the business location of Defendant DealMed, Inc. and the

personal residence of Defendant Michael Einhorn are located in Brooklyn, County of

Kings, City and State of New York.

Dated:    Brooklyn, New York
          January 20, 2011

                                    NAFTALI Z. DEMBITZER
                                    Law Offices of Naftali Z. Dembitzer
                                    Attorney for Plaintiff
                                    2127 59th Street
                                    Brooklyn, New York 11204
                                    (718) 614-6449

TO:  DealMed, Inc.
     1308 Avenue N
     Brooklyn, NY  11230

     Michael Einhorn
     1446 East 12th Street
     Brooklyn, NY  11230

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MICHAEL UHR,

                            Plaintiff,        Index No. _1570_/2011

            -against-

DEALMED, INC. and MICHAEL EINHORN,      **VERIFIED
COMPLAINT**

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiff Michael Uhr, by his attorney, Naftali Zvi Dembitzer, as and for his

Verified Complaint state as follows:

## FACTS COMMON TO ALL CAUSES OF ACTION

The Parties

    1.    Plaintiff Michael Uhr resides at 9 Engleberg Terrace, Lakewood, New Jersey.

    2.    Defendant DealMed, Inc. (the "Corporation") is a New York corporation with a

business office located at 1308 Avenue N, Brooklyn, County of Kings, City and State of New

York.

    3.    The Corporation is a medical supply company.

    4.    Defendant Michael Einhorn resides at 1446 East 12th Street, Brooklyn, County

of Kings, City and State of New York.

    5.    Defendant Michael Einhorn is the President of the Corporation.

The Equity Ownership of the Corporation

    6.    The Corporation was incorporated in New York State on March 23, 2006.

    7.    The Corporation is authorized to issue 200 shares under its Certificate of

Incorporation.

8.    Upon information and belief, at all times herein mentioned, Defendant Michael Einhorn was the President of the Corporation and had control over its corporate affairs.

9.    Prior to December 2008, Defendant Einhorn was the registered owner of the 100 shares of the Corporation then outstanding.

10.   On or about December 24, 2008, Plaintiff Michael Uhr, Iszchak Schwartz and Defendant Michael Einhorn entered into a shareholders agreement, dated as of December 24, 2008 (the "Shareholders Agreement"), a copy of which is annexed as Exhibit "A".

11.   Pursuant to the Shareholders Agreement, Plaintiff Michael Uhr and Iszchak Schwartz were each to contribute $250,000 to the Corporation in exchange for a 25% interest in the corporation.

12.   Upon information and belief, Plaintiff Michael Uhr has contributed more than $500,000, in the aggregate, to the Corporation.

13.   Thus, after the required contributions were made, Defendant Michael Einhorn was to be a 50% shareholder in the Corporation and Plaintiff was to be a 25% shareholder in the Corporation, with the remaining 25% of the shares to be owned by Iszchak Schwartz. See Exhibit "A" at Article II.

14.   Despite their agreement, Defendant Michael Einhorn refused to cause the Corporation to issue stock certificates to Plaintiff Michael Uhr and he did not transfer any of his shareholdings in the Corporation to Plaintiff Michael Uhr equal to 25% of the outstanding shares of the Corporation.

15.   On or about February 6, 2010, Plaintiff Michael Uhr and Defendant Michael Einhorn agreed, *inter alia*, that (i) Plaintiff Michael Uhr would contribute additional funds to the Corporation; (ii) the registered ownership of the outstanding shares of the

2

Corporation would be divided 50-50 between Plaintiff Michael Uhr and Defendant Michael Einhorn; and (iii) Iszchak Schwartz would not hold any shares of the Corporation (the "Supplemental Agreement" and together with the Shareholders Agreement, the "Agreements"). See Exhibit "B".

16.   From in or about February 2010 and continuing to the present, Defendant Michael Einhorn has refused to issue any shares in the Corporation to Plaintiff Michael Uhr.

17.   Upon information and belief, despite his refusal to issue any shares of the Corporation to Plaintiff Michael Uhr, Defendant Michael Einhorn has been dealing with Plaintiff Michael Uhr as an equity owner of the Corporation for the past two years.

18.   This complaint stems from the breach of the Agreements by Defendant DealMed and Defendant Michael Einhorn (collectively, the "DealMed Defendants") and the anticipated sale of the Corporation by Defendant Michael Einhorn to third parties.

19.   Upon information and belief, Defendant Michael Einhorn is negotiating a sale of the Corporation's assets or a transfer of his shares in the Corporation to one or more buyers.

20.   Any such asset sale or stock transfer would contravene the right of Plaintiff Michael Uhr as a shareholder of the Corporation.

21.   Plaintiff Michael Uhr does not consent that Defendant Michael Einhorn should transfer any assets of the Corporation or any shares of the Corporation to any buyer.

## AS AND FOR A FIRST CAUSE OF ACTION

22.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "21" above with the same force and effect as if set forth at length herein.

23.   The Agreements were valid, binding and enforceable.

3

24.   Plaintiff Michael Uhr has fully performed his obligations under the Agreements.

25.   The Shareholders Agreement provided that Plaintiff Michael Uhr would own 25% of the shares of the Corporation.

26.   In contravention of the Shareholders Agreement, Defendant Michael Einhorn never transferred any shares of the Corporation to Plaintiff Michael Uhr as required by the Shareholders Agreement.

27.   Defendant Michael Einhorn violated the terms of the Shareholders Agreement by refusing to transfer any shares to Plaintiff Michael Uhr.

28.   Likewise, the Supplemental Agreement provided that Plaintiff Michael Uhr would own 50% of the outstanding shares of the Corporation.

29.   In contravention of the Supplemental Agreement, the DealMed Defendants never issued any shares to Plaintiff Michael Uhr.

30.   The DealMed Defendants violated the terms of the Supplemental Agreement by refusing to issue any shares to Plaintiff Michael Uhr.

31.   Plaintiff Michael Uhr continues to be damaged by the DealMed Defendants' breach of the Agreements.

## AS AND FOR A SECOND CAUSE OF ACTION

32.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "21" and "22" through "31" above with the same force and effect as if set forth at length herein.

33.   The Agreements were valid, binding and enforceable.

34.   Plaintiff Michael Uhr has fully performed his obligations under the Agreements.

4

35.   The Agreements each provided that Plaintiff Michael Uhr would own shares of the Corporation.

36.   The DealMed Defendants have never issued new shares or transferred existing shares to Plaintiff Michael Uhr as required by the Agreements.

37.   Upon information and belief, Plaintiff Michael Uhr has requested access to the books and records of the Corporation.

38.   Upon information and belief, the DealMed Defendants have never granted Plaintiff Michael Uhr access to the books and records of the Corporation.

39.   Plaintiff Michael Uhr is entitled to receive shares of the Corporation under the Agreements and the DealMed Defendants have no right to refuse to issue those shares to Plaintiff Michael Uhr.

40.   Plaintiff Michael Uhr is a shareholder of the Corporation and should be declared to be a shareholder of the Corporation by this Court.

41.   Plaintiff Michael Uhr has the right to inspect the books and records of the Corporation.

42.   The DealMed Defendants have no right to deny the Plaintiff Michael Uhr access to the books and records of the Corporation.

43.   This Court should direct the DealMed Defendants to (i) issue or transfer 50% of the outstanding shares of the Corporation to Plaintiff Michael Uhr and (ii) provide access to the books and records of the Corporation to Plaintiff Michael Uhr.

## AS AND FOR A THIRD CAUSE OF ACTION

44. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "21", "22" through "31", and "33" through "43" above with the same force and effect as if set forth at length herein.

45. The Agreements were valid, binding and enforceable.

46. Plaintiff has fully performed his obligations under the Agreements.

47. The Agreements each provided that Plaintiff Michael Uhr would own shares of the Corporation.

48. Defendant DealMed has never issued, and Defendant Michael Einhorn has never transferred, any shares of the Corporation to Plaintiff Michael Uhr as required by the Agreements.

49. Plaintiff Michael Uhr is entitled to receive shares of the Corporation under the Agreements and the DealMed Defendants have no right to refuse to issue those shares to Plaintiff Michael Uhr.

## AS AND FOR A FOURTH CAUSE OF ACTION

50. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "21", "22" through "31", "33" through "43", and "45" through "49" above with the same force and effect as if set forth at length herein.

51. The Agreements were valid, binding and enforceable.

52. Plaintiff Michael Uhr has fully performed his obligations under the Agreements.

53. The Agreements each provided that Plaintiff Michael Uhr would own shares of the Corporation.

6

54.  However, Defendant DealMed has never issued, and Defendant Michael Einhorn has never transferred, any shares of the Corporation to Plaintiff Michael Uhr as required by the Agreements.

55.  As a shareholder of the Corporation, Plaintiff Michael Uhr is entitled to receive prior notice of any sale of the assets of the Corporation or the transfer shares of the Corporation under the Agreements.

56.  Further, as a shareholder of the Corporation, Plaintiff Michael Uhr must consent to any sale of the assets of the Corporation or any transfer of shares of the Corporation under the Agreements.

57.  Under the Agreements, the DealMed Defendants may not sell the assets of the Corporation or transfer shares of the Corporation without the consent of Plaintiff Michael Uhr.

58.  This Court should enjoin the DealMed Defendants and all those acting in concert with them from transferring any of the assets of the Corporation or any of the shares of the Corporation to one or more buyers without the prior consent of Plaintiff Michael Uhr, until such time as this Court can determine what percentage of the shares of Defendant DealMed is owned by Plaintiff Michael Uhr.

## AS AND FOR A FIFTH CAUSE OF ACTION

59.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "21", "22" through "31", "33" through "43", "45" through "49", and "51" through "58" above with the same force and effect as if set forth at length herein.

60.  If it is determined that no express contract exists between Plaintiff Michael Uhr and the DealMed Defendants, then Plaintiff Michael Uhr pleads in the alternative that he is entitled to relief against the DealMed Defendants based on their unjust enrichment.

7

61. Plaintiff Michael Uhr contributed funds to the DealMed Defendants with the expectation that he would receive shares in the Corporation.

62. The shares were never issued to Plaintiff Michael Uhr.

63. Defendant DealMed and its president, Defendant Michael Einhorn, were enriched by receiving those funds from Plaintiff Michael Uhr.

64. The DealMed Defendants' unlawful refusal to issue or transfer any shares of the Corporation to Plaintiff Michael Uhr has deprived him of asserting any rights as a shareholder of the Corporation.

65. The enrichment of the DealMed Defendants of receiving funds from Plaintiff Michael Uhr without issuing any shares of the Corporation to him was at Plaintiff Michael Uhr's expense as it prevented him from exercising the rights of a shareholder in the Corporation.

66. Equity and good conscience require the DealMed Defendants to either issue shares of the Corporation to Plaintiff Michael Uhr or to make restitution to him.

67. Plaintiff Michael Uhr is thus entitled to the requested relief against the DealMed Defendants due to unjust enrichment.

WHEREFORE, Plaintiff Michael Uhr demands Judgment as follows:

A. On the First Cause of Action, that it be adjudged that the DealMed Defendants, jointly and severally, owe Plaintiff Michael Uhr damages for breach of contract in the amount of not less than $500,000;

B. On the Second Cause of Action, that the Court declare that Plaintiff Michael Uhr is a shareholder of the Corporation and direct the DealMed Defendants to grant access to the books and records of the Corporation to Plaintiff Michael Uhr;

8

Jan. 26. 2011  9:28AM

C.  On the Third Cause of Action, that the Court direct Defendant DealMed and Defendant Michael Einhorn to issue or transfer not less than 50% of the outstanding shares of the Corporation to Plaintiff Michael Uhr;

D.  On the Fourth Cause of Action, that the Court enjoin the DealMed Defendants and all those acting in concert with them from transferring any of the assets of the Corporation or any of the shares of the Corporation to one or more buyers, without the prior consent of Plaintiff Michael Uhr, until such time as this Court can determine what percentage of the shares of Defendant DealMed is owned by Plaintiff Michael Uhr;

E.  On the Fifth Cause of Action, that the Court direct that Defendant DealMed and Defendant Michael Einhorn issue or transfer a number of shares of the Corporation to Plaintiff Michael Uhr so that he will hold 50% of the outstanding shares of the Corporation or direct those defendants to make restitution to Plaintiff Michael Uhr;

F.  On All Causes of Action, that the Court impose a lien and impress a trust, as of the date of the commencement of this action, upon the assets of the Corporation, as well as 50% of the outstanding shares of the Corporation (including those shares held by Defendant Michael Einhorn), (i) to assure the performance of the acts and things directed or required by the Court to be done by any of the defendants or enjoined by the Court and (ii) to protect Plaintiff Michael Uhr's rights as a shareholder of the Corporation and his rights under the Agreements, including preventing Defendant Michael Einhorn from selling the assets of the Corporation or transferring the stock in the Corporation without the consent of Plaintiff Michael Uhr; and

9

Jan. 26. 2011  9:28AM

Corporation or transferring the stock in the Corporation without the consent of Plaintiff

Michael Uhr; and

G.   On All Causes of Action, awarding Plaintiff Michael Uhr such other, further and

different relief as is just, necessary and proper, including, but not limited to, interest, costs and

attorneys' fees to the extent permitted by law.

Dated:      Brooklyn, New York
            January 20, 2011

                                          NAFTALI Z. DEMBITZER
                                          Law Offices of Naftali Z. Dembitzer
                                          Attorney for Plaintiff
                                          2127 59th Street
                                          Brooklyn, New York  11204
                                          (718) 614-6449

10

# VERIFICATION

STATE OF NEW YORK    )
                     Ss:
COUNTY OF KINGS      )

NAFTALI ZVI DEMBITZER, an attorney duly admitted to practice law in the Courts of the State of New York, under penalty of perjury, affirms the following:

1. That deponent is the attorney for Plaintiff Michael Uhr in this action.

2. That deponent has read the foregoing VERIFIED COMPLAINT and knows the contents thereof; that the same is true to the deponent's own knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters, deponent believes it to be true.

3. The reason this verification is not made by Plaintiff Michael Uhr and is made by deponent is that Plaintiff Michael Uhr is not presently located in the county where the deponent-attorney maintains his office.

Dated: Brooklyn, New York
       January 20, 2011

NAFTALI Z. DEMBITZER

D. Person:

Any natural person or corporation, partnership or other business entity not a party to this Agreement.

E. Stock:

The shares of common stock of the CORPORATION issued and to be issued in accordance with the provisions of this Agreement.

## ARTICLE II
## ISSUANCE OF STOCK

A. The Stock shall be issued as follows:

| | | |
|---|---|---|
| (i) | EINHORN - | 50 shares |
| (ii) | SCHWARTZ - | 25 shares |
| (iii) | UHR | 25 shares |

B. All certificates for the Stock shall be marked as follows:

"Sale, transfer, pledge or any other disposition of the shares represented by this certificate is restricted by the terms of a Shareholders Agreement dated as of December___, 2008 and all shares may be sold, transferred, pledged or otherwise disposed of only upon compliance with that Agreement".

C. The SHAREHOLDERS agree and acknowledge that EINHORN formed the CORPORATION in March 2006, and that EINHORN has been issued 100 shares and that SCHWARTZ and UHR's respective investments of capital as described herein at length, are being contributed to obtain one quarter interests in the CORPORATION and that EINHORN is transferring 25 of his shares to SCHWARTZ and 25 of his shares to UHR as a result thereof.

D. In order to obtain their respective one quarter interests in the CORPORATION, SCHWARTZ and UHR will each invest $250,000.00 for a combined total of $500,000.00 which shall be deemed capital and not a loan. The parties acknowledge that SCHWARTZ has previously invested $27,100.00 in the CORPORATION in October 2008 and that said money shall be considered as a payment toward the capital that SCHWARTZ has agreed to invest. The balance shall be invested according to the following schedule:

(i) $150,000.00 by UHR and $122,900.00 by SCHWARTZ upon the execution of this Agreement;

(ii) $100,000.00 by both UHR and SCHWARTZ on or before February 1, 2009.

EINHORN shall transfer 25% of his common shares to SCHWARTZ and 25% of his common shares to UHR. Until such time as SCHWARTZ and UHR receive a combined $500,000.00 return, they shall receive a combined 8% priority distribution ("the Priority Distribution") and 60% of the profits generated by the CORPORATION. Distributions of profits made to SCHWARTZ/UHR pursuant to this provision shall be considered to reduce their respective risks, and shall be applied to reduce their initial investment. Payments of the Priority Distribution shall not be applied in reduction of SCHWARTZ/UHR's initial investment.

2

Notwithstanding that the capital invested shall remain in the CORPORATION and not be repaid, the 8% priority distribution shall be based on the $500,000.00 capital investment as reduced from time to time by the distributions provided for herein.

For example: $500,000.00 x 8% = $40,000.00. If the CORPORATION distributes no profits and if in 2009 the CORPORATION pays SCHWARTZ $20,000.00 and UHR $20,000.00 the priority return in 2010 shall still be based on $500,000.00. If the CORPORATION distributes $30,000.00 of profits to SCHWARTZ and $30,000.00 to UHR plus the combined $40,000.00 priority return, the 8% is applied to the reduced sum of $440,000.00 so the priority return for 2010 shall be 8% of $440,000.00 and said formula shall be applied thereafter on the same basis.

SCHWARTZ/UHR shall be responsible for any income taxes attributable to such distributions. When SCHWARTZ/UHR receive distributions totaling a combined $500,000.00, profits shall thereafter be 25% for SCHWARTZ, 25% for UHR, and 50% for EINHORN. In any event, EINHORN shall always retain a 50% interest in the total capital invested by EINHORN and SCHWARTZ/UHR.

E. The parties hereto agree and acknowledge that, SCHWARTZ/UHR have agreed to deliver to ZIEGELHEIM an irrevocable proxy to vote SCHWARTZ and UHR's shares and to act in their place on all matters related to the CORPORATION. EINHORN has agreed to employ ZIEGELHEIM as the Secretary/Treasurer of the CORPORATION according to the terms set forth herein in Article IV.

F. No shares of the Stock shall be issued to any Person without the consent of all of the parties hereto; each Person must be a party to this Agreement prior to the issuance of any Stock to him.

ARTICLE III
ORGANIZATION

Promptly after the execution of this Agreement and in accordance with the provisions set forth in Article II, the parties shall hold appropriate meetings to accomplish the following:

A. To elect a Board of Directors (BOARD) which shall carry on the business of the CORPORATION which shall consist of Two (2) Directors. The Directors shall be EINHORN and ZIEGELHEIM.
B. Voting of the BOARD:

The following items shall require a unanimous vote of the BOARD:
(i) To make any decisions regarding any director and their compensation thereof;
(ii) To open additional accounts and deposit and maintain funds in the name of the CORPORATON in banks or savings and loan associations;
(iii) To create any indebtedness for borrowed money whether or not secured;

3

(iv)   Any expenditure or expense in excess of $5,000.00 per annum;

(v)   To make, execute or deliver on behalf of the CORPORATION any assignment for the benefit of creditors or any guarantee, indemnity bond, or surety bond;

(vi)   To obligate the CORPORATION as a surety, guarantor or accommodation party to any obligation;

(vii)   To confess any judgment on behalf of the CORPORATION;

(viii)   To do any act which makes it impossible to carry on the ordinary business of the CORPORATION;

(ix)   To open any bank, credit or investment account(s);

(x)   Issuance of additional Stock, warrants, options or securities of a similar nature;

(xi)   Changing the constitution of the BOARD;

(xii)   A sale of the assets of the CORPORATION outside the ordinary course of business;

(xiii)   Merger into or consolidation with another firm;

(xiv)   To commence lawsuits and other proceedings;

(xv)   To retain accountants, attorneys or other agents to act on behalf of the CORPORATION;

(xvi)   To acquire, sell, assign, or otherwise transfer any interest in any property;

(xvii)   Dissolution of the CORPORATION.

D In the event of a dispute between EINHORN and ZIEGELHEIM, within the first year of ZIELHEIM'S employment, regarding the business practice(s) of the CORPORATION, EINHORN and ZIEGELHEIM agree and acknowledge that they will follow the business practice(s) that the CORPORATION employed prior to the execution of this agreement.

## ARTICLE IV
## EMPLOYMENT

A. EINHORN shall be elected President and shall be required to manage the day-to-day-operations of the CORPORATION. EINHORN shall devote his best efforts to the faithful performance of said services and shall be employed at a salary of $104,000.00 per annum. ZIEGELHEIM agrees not to unreasonably withhold his consent for fair and reasonable increases to EINHORN's annual salary compensation.

B. ZIEGELHEIM shall be elected Financial Secretary and shall manage the CORPORATION's warehouse, New Jersey office, and shall assist EINHORN in the management of the day-to-day-operations of the CORPORATION. In addition, ZIEGELHEIM shall be responsible for all capital calls of the CORPORATION and he shall devote his best efforts to the faithful performance of the aforesaid services. He shall be employed at a salary of $100,000.00 per annum. EINHORN agrees not to unreasonably withhold his consent for fair and

4

reasonable increases to ZIEGELHEIM's annual salary compensation. C. SCHWARTZ and UHR shall not be involved in any of the day-to-day-operations of the CORPORATION.

## ARTICLE V
## RESTRICTIONS ON TRANSFER OF STOCK

No SHAREHOLDER of the CORPORATION shall sell, assign, pledge or otherwise transfer or encumber in any manner or by any means whatsoever any interest in all or any part of his capital Stock of the CORPORATION without the prior written consent of the other individual party hereto having first been obtained. No SHAREHOLDER shall dispose of any such stock without having first offered it to the other party hereto in accordance with the terms and conditions of this Agreement. Notwithstanding any such consent or offer, such disposition shall in no manner relieve the transferring party of any of his obligations under this Agreement and the transferee shall accept such stock subject to all of the restrictions, terms and conditions of this Agreement as if he were a party hereto and shall become a signatory hereof.

## ARTICLE VI
## SPECIFIC COVENANTS OF THE PARTIES

A. It is specifically understood that each SHAREHOLDER shall devote sufficient time and energy to promotion of the CORPORATION'S business.

B. It is specifically understood that each SHAREHOLDER and ZIEGELHEIM, pursuant to the terms of this Agreement shall not compete with the CORPORATION in the pursuit of its business, such competition to include solicitation of customers, utilization of prior employees of the CORPORATION, or any act of a similar or dissimilar nature which would affect the CORPORATION'S business activities.

C. Each party represents that he or it is not a party to any contract or other agreement, written or oral, which would prohibit him or it from entering into this Agreement or from performing those acts required by the terms of this Agreement to be performed by him or it.

D. The parties agree and acknowledge that in the event that any of the parties or their family members leaves the employment of the CORPORATION ("the leaving party"), for a period of three (3) years following termination of his employment, the leaving party shall not perform services, whether or not compensated therefore, directly or indirectly, or be interested (as an officer, employee, partner, consultant, principal, shareholder, investor or otherwise) in any firm or corporation which engages in a business competitive with that of the CORPORATION, its affiliates or any of its subsidiaries in any area in which CORPORATION its affiliates or any of its subsidiaries engage in such business at the time. In no event shall the leaving party, for a period of three (3) years after the termination of his relationship with the CORPORATION solicit, for himself or others, directly or indirectly any of the suppliers or customers served by the CORPORATION at the time of the termination of his relationship with the CORPORATION or any employees then employed by the CORPORATION.

5

E. The SHAREHOLDERS and ZIEGELHEIM further agree they will each maintain in strict security and confidence and not use, divulge, furnish, disclose or make accessible to any person, firm, corporation or organization in any manner whatsoever, any knowledge or information with respect to customers, suppliers, product lines, trade lists, financial data, special equipment, processes, trade secrets, licenses, programs, websites or plans of the CORPORATION, its affiliates or any of its subsidiaries, including all reports, drawings, pricing data and other information or documents, whether or not authored by the SHAREHOLDER and/or ZIEGELHEIM which refer or relate to said business without first obtaining the written consent therefore from the other SHAREHOLDER and ZIEGELHEIM, said consent not be unreasonably withheld. The SHAREHOLDERS and ZIEGELHEIM acknowledge that such information is of such character as to render the same unique and therefore agree that disclosure thereof in violation of the covenants contained in the Article VI herein may be of irreparable damage to the CORPORATION and each SHAREHOLDER and ZIEGELHEIM agrees and consents that the CORPORATION may have injunctive relief for the purpose of restraining a SHAREHOLDER and/or ZIEGELHEIM from using or disclosing any such information or violating the covenants contained herein in addition to any other relief to which the CORPORATION may be entitled under this agreement.

## ARTICLE VII
## METHOD OF SELLING STOCK

In the event a SHAREHOLDER shall desire to sell all of his capital Stock of the CORPORATION and shall not have received the prior written consent of the other party to this Agreement, he may sell all of said Stock only, in the manner set forth hereinafter:

A. A party intending to sell or dispose of his shares (hereinafter called a RETIRING SHAREHOLDER) shall give written notice, by registered or certified mail, to the REMAINING SHAREHOLDER and to the CORPORATION, offering all of his Stock in the CORPORATION for sale at the value thereof, pursuant to the provisions of Articles XI and XIII hereof.

B. For a period of fifteen (15) days after mailing of such notice, the CORPORATION shall have the option to redeem the Stock so offered. If the CORPORATION fails to exercise such option, the REMAINING SHAREHOLDER shall have, for a period of fifteen (15) days immediately subsequent to the expiration of the CORPORATION'S option, the option to purchase the offered Stock at the value thereof, pursuant to the provisions of Articles XI and XIII hereof, in proportion to his then holdings or as they may otherwise agree. The said options shall be exercised in the manner hereinafter provided.

C. If the REMAINING SHAREHOLDER shall fail to exercise the option to purchase the Stock so offered, the RETIRING SHAREHOLDER shall have the option of dissolving the CORPORATION. The REMAINING SHAREHOLDER shall be deemed to have given his consent thereto with the same effect as though a meeting for such purpose had been called and held in accordance with the By-Laws, and anything contained in the By-Laws to the contrary shall be deemed to be superseded by this provision.

6

D. An election to dissolve the CORPORATION by, or to purchase or redeem the Stock of, the RETIRING SHAREHOLDER shall be exercised in writing and sent, by certified or registered mail, to the RETIRING SHAREHOLDER or to the REMAINING SHAREHOLDER, as the case may be, not later than Thirty (30) days following the giving of the original notice of offer above referred to, and if election be made to dissolve, the BOARD of the CORPORATION shall proceed forthwith to dissolve the CORPORATION and to wind up its affairs.

E. If the election to purchase or redeem the Stock of the RETIRING SHAREHOLDER be made, the value thereof referred to above shall be determined in accordance with the provisions hereinafter provided, and a closing date may be fixed by any of the parties by notice in writing and sent by certified or registered mail to all of the parties involved, which notice shall specify a place within the counties of Kings as the place for closing, and an hour and date not earlier than Thirty (30) days or later than Fifty (50) days after the giving of the notice of closing, as the time for such closing.

F. In the event that at the time of purchase the RETIRING SHAREHOLDER shall be indebted to the CORPORATION for any sum whatsoever, the amount of such indebtedness shall be paid the CORPORATION by the RETIRING SHAREHOLDER, or, in the event that the purchaser of the shares of Stock of the RETIRING SHAREHOLDER shall be the CORPORATION, then the amount of such indebtedness shall be deducted from the purchase price to be paid by the CORPORATION. In the event that the CORPORATION shall be indebted to the RETIRING SHAREHOLDER at the time of purchase, then the amount of such indebtedness shall be paid by the CORPORATION, in addition to the purchase price to be paid for the shares of Stock of the RETIRING SHAREHOLDER. At the option of the CORPORATION, such indebtedness may be paid to the RETIRING SHAREHOLDER, either in a lump sum or in no more than three (3) equal annual installments, with the first payment to be made at the closing and the other installments to be paid on the next two (2) anniversary dates of the closing.

G. Notwithstanding the provisions set forth herein this Article VII, SCHWARTZ agrees that he shall not have the right to offer his shares for sale without the prior written consent of EINHORN.

## ARTICLE VIII
## DEATH OF A SHAREHOLDER

In the event of the death of a SHAREHOLDER the shares of Stock of the CORPORATION owned by the Decedent shall be deemed offered for sale under the terms and conditions hereinbelow set forth. The SURVIVING SHAREHOLDER must arrange for the purchase of the shares of Stock of said DECEASED SHAREHOLDER, either by SURVIVING SHAREHOLDER or the CORPORATION or jointly by said SURVIVING SHAREHOLDER and the CORPORATION. Said purchase shall be made under the following terms and conditions:

A. The said purchase shall be exercised by giving written notice thereof, by certified or registered mail, to a legal representative of the estate of the DECEASED SHAREHOLDER

7

within Thirty (30) days after the date of death, or, in the event that no legal representative of the estate of the DECEASED SHAREHOLDER shall be designated by a court of competent jurisdiction within the said Thirty (30) days, then the said obligation to purchase shall be by written notice thereof, by certified or registered mail, by either party to the other, within Thirty (30) days after receipt of such designation.

B. The purchase price to be paid for the shares of Stock of the DECEASED SHAREHOLDER and the terms of payment thereof shall be determined in accordance with the provisions of Article XI and Article XIII hereof.

C. The determination and fixing of the aforementioned purchase price for the shares of Stock owned and held by the DECEASED SHAREHOLDER at the time of his death shall be binding and conclusive upon the SURVIVING SHAREHOLDER, upon the CORPORATION and upon the estate of the DECEASED SHAREHOLDER and his legal representatives. To effectuate further the desires and intentions of the parties hereto, neither the surviving spouse, nor any other legal representative of the estate of the DECEASED SHAREHOLDER, nor any person or persons representing or acting on behalf of the said surviving spouse or the said estate or the said legal representatives shall have the right or privilege of procuring or conducting an examination or audit of any of the books of account or records of the CORPORATION for the purpose of determining what, in their opinion, is the value of the shares of Stock owned by the DECEASED SHAREHOLDER at the time of his death, or for any other reason or purpose whatsoever, except as provided in Article XII hereof. In adopting and agreeing upon the provisions herein set forth for the purchase of shares of stock of the DECEASED SHAREHOLDER the parties hereto have taken into consideration their desire to avoid any dispute or controversy in determining the value the shares of Stock owned and held by the DECEASED SHAREHOLDER at the time of his death, and their further desire to facilitate the purchase of the said shares of stock and the continuation of the business of the CORPORATION without any interference or interruption whatsoever.

D. The SURVIVING SHAREHOLDER shall have the right to determine whether the purchaser or purchasers of the shares of Stock of the DECEASED SHAREHOLDER shall be the said SURVIVING SHAREHOLDER, the CORPORATION or both. In the event that the SURVIVING SHAREHOLDER desires that any of the shares of Stock owned by the DECEASED SHAREHOLDER shall be purchased by the CORPORATION, and in the event that the CORPORATION does not have sufficient surplus to purchase the said shares of Stock, then the SURVIVING SHAREHOLDER shall have the right to procure the creation of sufficient surplus therefore, pursuant to Article XIV hereof.

E. In the event that the CORPORATION shall purchase any of the shares of Stock owned by the DECEASED SHAREHOLDER, then the SURVIVING SHAREHOLDER shall guarantee payment by the CORPORATION of the amount to be paid by it for such shares of Stock.

F. The aforementioned obligation to purchase, either by SURVIVING

8

SHAREHOLDER or the CORPORATION, must be with reference to all of the shares of Stock owned and held by the DECEASED SHAREHOLDER at the time of his death, and such purchase shall not be with reference only to a portion of the said shares of Stock,

G. In the event that at the time of his death, the DECEASED SHAREHOLDER shall be indebted to the CORPORATION for any sum whatsoever, the amount of such indebtedness shall be paid the CORPORATION by the estate of the DECEASED SHAREHOLDER, or in the event that the purchaser of the shares of Stock of the DECEASED SHAREHOLDER shall be the CORPORATION, then the amount of such indebtedness shall be deducted from the purchase price to be paid by the CORPORATION. In the event that the CORPORATION shall be indebted to the DECEASED SHAREHOLDER at the time of his death, then the amount of such indebtedness shall be paid by the CORPORATION, in addition to the purchase price to be paid for the shares of Stock of the DECEASED SHAREHOLDER.

H. The closing of the sale of such shares shall take place at the office of the CORPORATION on an agreed date not later than Thirty (30) days after the date of notice from either party to the other, as provided in Paragraph "A" hereinabove set forth.

I. The SURVIVING SHAREHOLDER shall have the right to conduct the business of the CORPORATION from the date of death of the DECEASED SHAREHOLDER without any joint supervision or interference of any kind or nature whatsoever, either by the surviving spouse or other legal representative of the estate of the DECEASED SHAREHOLDER or any person or persons representing them.

J. The SURVIVING SHAREHOLDER and the CORPORATION shall have the sole right to continue to use the name of the CORPORATION without the payment of any additional consideration therefore.

## ARTICLE IX
## DISABILITY

A. As used herein, total disability shall mean such mental or physical disability as to prevent an individual from substantially performing his duties for the CORPORATION.

B. If an EMPLOYEE who is a party to this Agreement is totally disabled, CORPORATION shall pay to or on behalf of the DISABLED EMPLOYEE all benefits and compensation as provided for prior to such disability, less any payments received by the DISABLED EMPLOYEE from other sources as a result of said disability for a period of three (3) months, from the date such disability commenced, and half of such benefits and compensation less any payments received by the DISABLED EMPLOYEE from other sources as a result of said disability for an additional period of three (3) months.

C. After six (6) months from the date of such disability, CORPORATION shall not be responsible to make any payments to the DISABLED EMPLOYEE, except that CORPORATION shall either assign to the DISABLED EMPLOYEE or pay to on behalf of the

9

DISABLED EMPLOYEE all money received by the CORPORATION as disability income relating to the DISABLED EMPLOYEE's disability.

D. If the DISABLED EMPLOYEE remains totally disabled for the aforesaid six (6) month period, he shall be deemed to have offered his Stock for sale in accordance with the terms of Article XIII hereof as of the end of such period.

E. The period of total disability shall be deemed terminated at such time as the DISABLED EMPLOYEE has substantially resumed his duties for the CORPORATION and carried out such duties for a continuous period of thirty (30) working days.

## ARTICLE X
## INSURANCE

A. The CORPORATION shall, in its sole discretion, have the right to obtain health and disability insurance and to insure the life of any of the SHAREHOLDERS, or any NEW SHAREHOLDER, (each such individual being hereinafter referred to as "the Insured") naming itself as beneficiary of the said policies. The policies and any proceeds received thereunder shall be held by the CORPORATION in trust for the purposes set forth in this Agreement.

B. The CORPORATION shall have the right to take out additional insurance, if available, on the life of an Insured when, in the opinion of the owners of all of the then issued and outstanding Stock, additional insurance may be required, and the said policies and proceeds thereof shall be subject to the terms, covenants and conditions of this Agreement.

C. The policies, if any, are described in Exhibit "A" annexed hereto. With respect to any such insurance policies, the CORPORATION shall pay all premiums on these policies while this Agreement continues in force. Such premiums will be paid as they become due and within Twenty (20) days after the due date of each premium the CORPORATION will give proof of payment thereof to the SHAREHOLDERS. If any premium is not paid within Twenty (20) days after its due date, the insured SHAREHOLDERS will have the right to pay such premiums and be reimbursed therefore by CORPORATION. The CORPORATION may apply any dividends on the policies it carries toward payment of premiums. However, as long as this Agreement continues in force, CORPORATION will not, without the written consent of each the SHAREHOLDERS, borrow on the policies or utilize any right of ownership (except to collect death benefits) or modify or impair any rights or values of such policies.

D. In the event that any SHAREHOLDER ceases to be a party to this Agreement, by virtue of withdrawal from the CORPORATION or otherwise, such SHAREHOLDER shall have the right to purchase from the CORPORATION the insurance policies which the CORPORATION owns on his life. He will pay the CORPORATION for such policies in price equal to the cash surrender value of the policy at the date he offers to purchase such policies. Upon payment of such purchase price. the CORPORATION shall deliver the policies to the SHAREHOLDER and execute any necessary instruments of transfer. In the event a SHAREHOLDER has not offered to buy policies owned by the CORPORATION on his life within Sixty (60) days after the sale of his Stock or his withdrawal from the CORPORATION,

10

CORPORATION shall be authorized to make whatever disposition of the policies insuring the life of such SHAREHOLDER which it deems fit and appropriate.

E. The respective Insured upon whose life the insurance policies shall be taken shall cooperate with the CORPORATION and make himself available for examination and execute any and all documents necessary to effectuate the issuance of said policies of insurance.

F. Upon the death of an Insured, the proceeds of a policy or policies on his life, whether or not received by the CORPORATION, shall be included for the purpose of determining whether the CORPORATION is legally able to purchase the Stock of the respective Insured in the event that the CORPORATION should require to purchase the Stock of the Insured.

G. All proceeds collected on a policy as a result of the death of a SHAREHOLDER shall be paid to and held in escrow by the attorney for the CORPORATION, as Escrow Agent, solely for the purpose of redeeming the Shareholder's stock in accordance with Article VIII hereof,

## ARTICLE XI
## PURCHASE PRICE

A. The SHAREHOLDERS intend to meet not less often than every Twelve (12) months in order to fix an evaluation of the Stock of the CORPORATION, which evaluation shall be entered on Exhibit "B" annexed hereto, dated and initialed by all of the SHAREHOLDERS.

B. The purchase price of a DECEASED SHAREHOLDER'S Stock in the CORPORATION shall be the greatest of the following:

(i) The amount of the life insurance proceeds, if any, collected by the beneficiaries on the life of the decedent pursuant to this Agreement; or

(ii) Decedent's pro rata share of the last evaluation in Exhibit "B" aforementioned, if the death of the SHAREHOLDER occurs within the Six (6) month period following the date such evaluation has been made; or

(iii) If no evaluation has been made within a Six (6) month period prior to the death of the SHAREHOLDER, the book value of the shares to be sold as of the end of the month in which death occurred.

C. The purchase price of a selling SHAREHOLDER'S Stock shall be the book value of the shares to be sold, as of the end of the month in which the offer to sell was made.

D. For purposes of Subparagraphs "B(iii)" and "C" the Book Value shall be determined by the Certified Public Accountant regularly retained by the CORPORATION, in accordance with generally accepted accounting principles, computed pursuant to the provisions of Article XII of this Agreement entitled "Book Value", calculated as of the end of the month during which said death or offer occurred and presented in the form of a certified report to all parties within Forty-Five (45) days after the end of the month in which death occurred or offer made.

11

E. In addition to the purchase price established by the other provisions of this Article XI, the CORPORATION shall repay the outstanding balance, if any, of any loans made to the CORPORATION by the respective Shareholder, such repayment to be made in accordance with the terms of Article XIII of this Agreement.

## ARTICLE XII
## BOOK VALUE - CERTIFICATE OF VALUE

A. In determining Book Value of the Stock of the CORPORATION, the following shall be considered:

(i) Good will, trade names, trademarks and other intangible assets shall be deemed of no value unless acquired for a valuable consideration in which event the cost of acquisition shall be applied.

(ii) Merchandise inventory shall be taken in the presence of a representative of the SELLING SHAREHOLDER and REMAINING SHAREHOLDER, and shall be valued at the lower of cost or market.

(iii) Furniture, fixtures and other equipment shall be valued at the Book Value thereof, as of the date of calculation.

(iv) Cash in bank or on hand shall be taken at face value and all negotiable securities owned by the CORPORATION shall be taken at market value.

(v) Accounts receivable shall be taken at their net value after allowing for all customary discounts and reasonable reserves in the light of actual experience and practice.

(vi) All other assets, if any, customarily mentioned on the books of account of the CORPORATION shall be taken at their appraised value, but at not more than cost.

(vii) There shall be deducted from the aggregate of the foregoing assets of the CORPORATION, all liabilities as of said date of calculation, including without limitation therein any and all accrued wages, vacation pay, commissions or bonuses to salesmen, employees or others.

(viii) There shall also be deducted all taxes of every kind, nature and description, whether imposed by Federal, State or Municipal authorities which then shall be due and payable or which thereafter may become payable by the CORPORATION for the period prior to the date of calculation.

(ix) Appropriate reserves shall be set up to cover bad debts and any accrued or contingent tax or other liabilities as the accountant for the CORPORATION may determine to be necessary.

(x) The proceeds of any life insurance policies owned by the CORPORATION and collected upon the death of the SHAREHOLDER whose shares are being evaluated herewith, shall be deemed an asset of the CORPORATION and life insurance policies owned by the CORPORATION on the lives of the SHAREHOLDERS shall be valued as an asset at no more than the cash surrender value.

B. In the event any of the parties to a sale of shares objects to the determination of the Book Value found by the accountant of the CORPORATION, as herein provided, the objecting party shall notify the others hereto of such objection within Ten (10) days after the receipt of the determination of Book Value. In the event of an objection, the objecting party shall designate his own accountant at his own cost and expense to determine Book Value in accordance with the terms of this Agreement. If the accountant so designated by the objecting party and the accountant for the CORPORATION do not agree upon the Book Value within Fifteen (15) days thereafter, the dispute shall be referred to arbitration in accordance with the terms and provisions of this Agreement, and the actual Book Value as found by the arbitrator shall be final and binding upon all parties hereto.

## ARTICLE XIII
## MANNER OF PAYMENT FOR STOCK

### A. DECEASED SHAREHOLDER
The purchase price for the Shares of Stock of a DECEASED SHAREHOLDER, including the outstanding balance, if any, of any loans made by the DECEASED SHAREHOLDER to CORPORATION, shall be paid as follows:

(i) Any insurance proceeds collected in accordance with Article X shall be delivered as a minimum or down-payment, as the case may be, by the Escrow Agent to the personal representative of the DECEASED SHAREHOLDER.

(ii) The purchase price of the Stock of DECEASED SHAREHOLDER or, in the event there are insurance proceeds, the excess of such purchase price after payment of the proceeds of insurance, shall be paid as follows:
If the amount to be paid is less than the sum of One Hundred Thousand ($100,000.00) Dollars, the entire balance shall be paid at closing.
If the amount exceeds the sum of One Hundred Thousand ($100,000.00) Dollars, it shall be paid Twenty (20%) Percent or One Hundred Thousand ($100,000.00) Dollars, whichever is greater, at closing, and the balance in no more than five (5) equal consecutive annual installments to be paid on the next five (5) anniversary dates of the closing.

### B. SELLING SHAREHOLDER
The purchase price of the Stock of a SELLING SHAREHOLDER including the outstanding balance, if any, of any loans made by the SELLING SHAREHOLDER to CORPORATION, shall be paid as follows:

(i) If the amount due and payable is less than the sum of One Hundred Thousand ($100,000.00) Dollars, the entire balance shall be paid at closing;

13

(ii) If the amount exceeds the sum of One Hundred Thousand ($100,000.00) Dollars, it shall be paid Twenty (20%) Percent or One Hundred Thousand ($100,000.00) Dollars, whichever is greater, at closing, and the balance in no more than five (5) equal consecutive annual installments to be paid on the next five (5) anniversary dates of the closing.

C. Evidence of Indebtedness

Any deferred portion of the purchase price payable in accordance with Paragraphs "A" and "B" above, shall be evidenced by a series of negotiable Promissory Notes which shall bear interest at the rate of seven (7%) Percent per annum and shall provide for acceleration of the entire remaining balance in the event of default in the payment of any installment not cured within Ten (10) Days after its due date. The maker shall have the right to prepay all or any of said Notes in the inverse order of their maturity, with interest, but without premium or penalty. Where the maker of the Promissory Notes is CORPORATION, REMAINING SHAREHOLDER shall guarantee and endorse such notes. Where the maker of said Promissory Notes is the REMAINING SHAREHOLDER, the CORPORATION shall guarantee and endorse said Notes.

D. Security for Payment of the Obligation

During the period in which all or any part of the purchase price remains unpaid:

(i) The CORPORATION shall not increase the remuneration either directly or indirectly of Officers or Directors and shall not declare any dividends.

(ii) CORPORATION shall not take any action not in the normal, regular and customary course of its business without first obtaining the consent, in writing, of the legal representative of the DECEASED SHAREHOLDER or the SELLING SHAREHOLDER, whichever the case may be, such consent not to be unreasonably withheld.

(iii) CORPORATION will not merge in any other corporation or have any corporation merge into it, shall not consolidate with any other person, firm or corporation and shall not sell its business or assets or purchase the assets or business of any person, firm or corporation without first obtaining the consent of the legal representative of DECEASED SHAREHOLDER or SELLING SHAREHOLDER, whichever the case may be, such consent not to be unreasonably withheld.

(iv) The Stock to be purchased shall be delivered in escrow to the Escrow Agent hereinbefore named, together with an executed Stock Power and an executed standard form General Release in favor of CORPORATION and REMAINING SHAREHOLDER. Said Shares of Stock shall be duly endorsed in blank and have appropriate tax transfer stamps affixed thereto. Until a default, purchaser shall have all of the rights of ownership during the time said Stock is held in escrow and shall be entitled to vote said Stock, but not the physical possession of the Stock.

(v) REMAINING SHAREHOLDER shall deliver Certificates representing his Stock interest in CORPORATION, endorsed in blank together with executed Stock Powers, to the Escrow Agent, who shall hold such Certificates in escrow until all of the unpaid balance has

14

C. All loans shall require Two (2) signatures, EINHORN and ZIEGELHEIM.

D. The complete books, accounts and records of CORPORATION shall be kept in the corporate offices and shall be available for inspection by any party hereto at any time, on reasonable notice.

## ARTICLE XVI
## SALE OF ASSETS

The holders of One Hundred (100%) Percent of the Stock shall have the right to sell all the assets of CORPORATION or all the Stock provided such agreement of sale extends to the other SHAREHOLDER, if any, the right to participate in such sale on an equal basis and the same price. Reasonable notice of any such sale and such right to participate shall be given the other SHAREHOLDER.

## ARTICLE XVII
## VACANCY

If SCHWARTZ and UHR shall cease to be a SHAREHOLDER of the CORPORATION, ZIEGELHEIM shall automatically cease to be a Director, Officer and/or Employee of CORPORATION and a vacancy will thereby be created unless EINHORN votes otherwise. If a vacancy is declared, EINHORN shall be the sole Director of the CORPORATION.

## ARTICLE XVIII
## ACTIONS IN VIOLATION OF THIS AGREEMENT

A. In the event the Shares of Stock of any SHAREHOLDER are transferred or disposed of in any manner without complying with the provisions of this Agreement or, if such shares are taken in execution or sold in any voluntary or involuntary legal proceeding, sale, execution, bankruptcy, insolvency or in any other manner, the CORPORATION and the other SHAREHOLDER shall, upon actual notice thereof, in addition to their rights and remedies under this Agreement, be entitled to purchase such Shares from transferee thereof, under the same terms and conditions set forth in Article VII of the Agreement as if the transferee had offered to sell such Shares, but in no event shall the purchase price exceed the amount paid for the Shares by the transferee. CORPORATION may, at its option, refuse to transfer, on its books and records, Shares transferred in violation of this Agreement.

B. Any SHAREHOLDER who shall petition any Court for the dissolution of CORPORATION shall be deemed to have offered his Shares for sale under the same terms and conditions set forth in Article VII of this Agreement.

16

## ARTICLE XXII
### BINDING EFFECT OF AGREEMENT

This Agreement shall be binding not only on the parties hereto, but also on their heirs, executors, administrators, successors and assigns, and the parties hereto agree for themselves and their heirs, executors, administrators, successors and assigns, to execute any instruments which may be necessary or proper to carry out the purposes and intent of this Agreement.

## ARTICLE XXIII
### MISCELLANEOUS

A. The failure of any party to insist upon a strict performance of any of the terms, conditions or covenants herein contained shall not be deemed to be a waiver of any rights or remedies that such party may have under this Agreement, and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained.

B. The headings on the paragraphs are for convenience only and shall in no way be deemed part of the terms, conditions and covenants of this Agreement.

C. The parties agree and acknowledge that the Stock is unique and the parties hereto may obtain relief by way of injunction, specific performance and such other equitable relief that they may be entitled to.

D. The remedies granted in this Agreement are cumulative and not exclusive, and are in addition to any and all other rights and remedies granted and permitted under and pursuant to law.

E. This Agreement may be executed in multiple copies, each of which shall be deemed an original.

F. The SHAREHOLDERS and ZIEGELHEIM agree to submit any dispute arising out of this Agreement or the operation of the CORPORATION to Rabbi David Goldwasser, residing at 1336 East 21st Street Brooklyn, New York 11210, [Telephone No. (718) 339-4582]. In the event that Rabbi David Goldwasser is unavailable for any reason to adjudicate a dispute between the SHAREHOLDERS and/or ZIEGELHEIM, the SHAREHOLDERS and ZIEGELHEIM agree that the dispute will be adjudicated by a quorum of three (3) Rabbis, with EINHORN selecting one of the Rabbis of the quorum and SCHWARTZ/UHR and ZIEGELHEIM selecting one of the Rabbis of the quorum and the chosen Rabbis selecting a third Rabbi. Under no circumstances shall the SHAREHOLDERS and ZIEGELHEIM be permitted to submit a dispute arising out of the operation of the CORPORATION or under this Agreement to a Secular Court (e.g. New York State Courts) or other deciding body without the express written permission of Rabbi David Goldwasser.

18

## NOTICES

All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given when mailed, by certified or registered mail, certification or registration fee and postage prepaid, return receipt requested.

To appropriate parties at the respective addresses as contained in the records of the CORPORATION or to such addresses as may be given in writing by any such parties to the CORPORATION.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day, month and year first above written.

DEALMED, INC.

BY:

MICHAEL EINHORN

ISZCHAK SCHWARTZ

MICHAEL UHR

FISCHEL ZIEGELHEIM

20

## Michael Einhorn

From:    Michael Einhorn [michael.einhorn@dealmed.com]
Sent:    Saturday, February 06, 2010 8:05 PM
To:      'Michael Uhr'
Subject: Preliminary Agreement

Michael,

I have outlined below the verbal agreement that we reached.

Firstly, the remaining balance has to be paid. Yitzchok said he was going to review it and get back to me (I did not yet hear back from him in regards to this)

The following three terms we all agreed upon:

1. Additional funds would be invested in the business; an amount has not been decided because you first wanted to receive your shares. An investment of up to 250K would not dilute my position.
2. A proposal in regards to my salary was to be determined ( I have a proposal that I will forward you in a separate email)
3. Shares will be divided 50/50 and a new shareholders agreement will be completed. The responsibilities of day-to-day operations (CEO) remain unchanged.

4. Shareholders/Operating agreement will be completed by March 8th 2010



**Michael Einhorn**
*President / CEO*
P (718) 332-5633 x 201
F (347) 713-3179
E michael.einhorn@dealmed.com
www.dealmed.com

***** NOTICE *****
If you are not the intended recipient of this email, you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this email and any files transmitted with it is strictly prohibited. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify webmaster@dealmed.com or 1-800-569-0570

Michael Uhr X.
Michael Einhorn x

2/15/2010

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

---------------------------------------------------------------------X

MICHAEL UHR,

                                Plaintiff,

        -against-

DEALMED, INC. and MICHAEL EINHORN,

                      Defendants.

---------------------------------------------------------------------X

        **STIPULATION**
        **EXTENDING**
        **TIME TO ANSWER**

Index No.: 1570-2011

        **IT IS HEREBY STIPULATED** that the time for the defendants to appear and to

answer, amend or supplement the answer as of course or to make any motion with

relation to the summons and complaint in this action, be and the same hereby is

extended to and including the 28th day of March, 2011.  Facsimile signatures shall be

deemed as originals.

Dated: Melville, New York
       February 25, 2011

                                  Michael B. Schulman & Associates, P.C.
                                  By: Michael B. Schulman
                                  Attorneys for Defendants
                                  145 Pinelawn Road, Suite 310N
                                  Melville, New York  11747
                                  Phone: 631-622-2080
                                  Fax:    631-622-2084

                                  Naftali Z. Dembitzer
                                  Attorney for Plaintiff
                                  2127 59th Street
                                  Brooklyn, New York  11204
                                  Phone: 718-614-6449
                                  Fax:    718-407-4067

*Index No.:*                                    *Year*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

MICHAEL UHR,

                                                    Plaintiff,

            -against -

DEALMED, INC. and MICHAEL EINHORN,

                                                    Defendants.
_____

# NOTICE OF REMOVAL
_____

## MICHAEL B. SCHULMAN & ASSOCIATES, P.C.

            *Attorney(s) for*                    Defendants
                                    Office and Post Office Address:
                                    145 Pinelawn Road, Suite 310N
                                    Melville, New York  11747
                                    Phone:  (631) 622-2080
                                    *Facsimile:  (631) 622-2084*

        **\*PLEASE TAKE NOTICE,**  that pursuant to CPLR 2103(5), the offices of MICHAEL B. SCHULMAN & ASSOCIATES, P.C., <u>does not</u> accept service of papers, notice, motions, etcetera, by facsimile (FAX), e-mail, or any other electronic transmittal.\*
_____

*Service of a copy of the within*                *is hereby admitted.*
*Dated:*
                                    ............................................................................................
                                    *Attorney(s) for*
_____

        Pursuant to 22 NYCRR 130-1.1a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief, and after reasonable inquiry, the contentions contained in the annexed documents are not frivolous.

Dated:                              ............................................................................................
_____

PLEASE TAKE NOTICE

    [ ]         *that the within is a (certified) true copy of a*                    *duly entered in the office of the clerk*
    NOTICE      *of the within named Court on*                    *19 .*
    OF ENTRY

    [ ]         *that a Judgment of which the within is a true copy will be presented for settlement to the Hon.*
    NOTICE OF   *one of the judges of the within named Court, at*          *, New York on*            *, at*      *a.m.*
    SETTLEMENT
Dated:
                                    Yours, etc.

                                    MICHAEL B. SCHULMAN & ASSOCIATES, P.C.
                                    Attorney(s) for Defendants
                                    145 Pinelawn Road, Suite 310N
                                    Melville, New York  11747
                                    (631) 622-2080

To:

Attorney(s) for